# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

DEVAUGHN DORSEY,

    Defendant.

NO. CR08-245RSL

ORDER GRANTING MOTION TO SUPPRESS POST-ARREST STATEMENTS

## I. INTRODUCTION

This matter comes before the Court on defendant Dorsey's "Motion to Suppress Post-Arrest Statements," Dkt. #131. On February 11, 2009, the Court held an evidentiary hearing regarding this motion. Dkt. #194. The Court concluded that defendant's Miranda[1] rights were violated when the detectives continued to question him after he had clearly invoked his right to counsel. The Court requested further briefing on whether defendant subsequently re-initiated the interview and waived his right to counsel. For the reasons set forth below, the Court grants defendant's motion to suppress.

## II. DISCUSSION

**A. Background**

Defendant is charged with Conspiracy to Traffic in Motor Vehicles, Operating a Chop

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

ORDER GRANTING MOTION TO
SUPPRESS POST-ARREST
STATEMENTS - 1

Shop, and Trafficking in Motor Vehicles. Dkt. #101. Defendant was apprehended on May 22, 2008 and eventually transported to a Seattle Police Department building, where Detective Paul Suguro and Detective Donovan Daly began questioning him in a session that was video and audio recorded. At the beginning of the session, Detective Suguro read defendant his Miranda rights, and defendant indicated he understood those rights. Dkt. #151, Attach. A at 2. After a few minutes of background questions, the detectives began to ask defendant about his alleged involvement in a suspected auto theft ring. Detective Daly told defendant that he had worked on defendant's prior federal case, to which defendant responded: "Well it's like this, okay . . . I did have an attorney present there. I do want an attorney present. But, I do got valuable information for you . . ." Id. at 14. Detective Daly told defendant, "[W]e're gonna respect your wishes. But, your opportunity's here, and now gone." Id. The detectives continued the interview for a few minutes, primarily questioning whether defendant wanted to talk to them without an attorney. Id. at 15. Eventually, the detectives stepped out of the room, telling defendant "we gotta go make a phone call," id. at 17, and instructing him to knock on the door if he needed anything, id.

Approximately a half hour later, defendant knocked on the door and Detective Jason Kasner allowed him to use the bathroom and provided him with a bandage for his hand. Id. at 18. Defendant then asked Detective Kasner about the other officers:

> Dorsey: They tell you they comin' back in?
>
> [Kasner]: Yeah. Did you want 'em back in?
>
> Dorsey: Huh?
>
> [Kasner]: Did you wanna see Suguro?
>
> Dorsey: I mean, they said they was comin' back. I mean, what they gonna do? I mean, if not . . .
>
> [Kasner]: Alright, hold on a second.

ORDER GRANTING MOTION TO
SUPPRESS POST-ARREST
STATEMENTS - 2

Id. at 18-19. A half hour later, Detective Suguro opened the door to the room and asked defendant, "What do you need, Dorsey?" Id. at 19.[2]

    Dorsey: Oh, I already went to the bathroom.

    [Suguro]: Oh, did you go already?

    Dorsey: Yeah.

    [Suguro]: I thought you wanted to talk to us or something.

    Dorsey: Yeah. I'm wondering when ya'll was coming back. I mean, am I just sitting here or . . .

    [Suguro]: You're just sitting there. Do you wanna talk to us or what?

    Dorsey: I been told ya'll that. Ya'll left. I didn't tell you guys to leave. Ya'll left.

    [Suguro]: Okay. Well do you wanna talk to us then?

    Dorsey: I signed the paper to talk to you, didn't I?

    [Suguro]: Okay. Let me get my stuff.

Id. The detectives returned to the room and Detective Suguro re-read defendant his Miranda rights, which defendant acknowledged in writing. Id. at 20. After Detective Suguro clarified that defendant wished to talk without his attorney present, id., defendant signed a waiver of rights form, id. at 21.

    At the February 11, 2009 evidentiary hearing, the Court concluded from the bench that defendant clearly invoked his right to counsel when he told the detectives, "I did have an attorney present there. I do want an attorney present. But, I got valuable information for you . . ." Id. at 14; see Dkt. #194. The Court found that defendant's desire to have an attorney present was not inconsistent with or rendered equivocal by his desire to give information to the

---

[2] The transcript reads, "Greetings Dorsey," id. at 19, but upon reviewing the DVD of the interview, the Court agrees with the government, see Dkt. #151 at 9 n.8, that this is incorrect.

police. The Court requested further briefing, however, on whether defendant subsequently initiated conversation with detectives and waived his previously-asserted right to counsel.

**B. Analysis**

In Edwards v. Arizona, 451 U.S. 477 (1981), the Supreme Court held that "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police*," id. at 484-85 (emphasis added). In determining whether the accused waived his Fifth Amendment right to have counsel present during interrogation, the government must show (1) that the accused initiated the conversation, and (2) that "the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances[.]" Oregon v. Bradshaw, 462 U.S. 1039, 1045, 1046 (1983) (quoting Edwards, 451 U.S. at 486 n.9).

"[T]here are undoubtedly situations where a bare inquiry by either a defendant or by a police officer should not be held to 'initiate' any conversation or dialogue. There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation." Id. at 1045. In this vein, defendant's request of Detective Kasner to use the bathroom, Dkt. #151, Attach. A at 18, did not "initiate" a conversation under Edwards since it "relat[ed] to routine incidents of the custodial relationship," Bradshaw, 462 U.S. at 1045.

It is a much closer question, however, whether defendant's subsequent inquiry as to what the detectives were going to do constituted an Edwards initiation. In Bradshaw, the plurality found that in asking, "Well, what is going to happen to me now?", the respondent "evinced a willingness and a desire for a generalized discussion about the investigation." Id. at 1045-46. Here, defendant similarly asked a forward-looking, general question about the officers'

ORDER GRANTING MOTION TO
SUPPRESS POST-ARREST
STATEMENTS - 4

1  intentions when he asked Detective Kasner, "I mean, they said they was comin' back. I mean,
2  what they gonna do?" Dkt. #151, Attach. A at 19.

3  But the Court need not even reach the <u>Edwards</u> initiation question if the initial
4  interrogation never actually ended. While in <u>Bradshaw</u>, "[t]he officer immediately terminated
5  the conversation" after the respondent requested an attorney, 462 U.S. at 1042, here the
6  detectives continued to question defendant after he invoked his right to counsel until they
7  satisfied themselves that he had changed his mind. The detectives assured him that "nothing's
8  going to be twisted," Dkt. #151, Attach. A at 14, and persisted in probing whether defendant
9  "want[ed] to continue to talk or not," <u>id.</u> at 15. Although defendant indicated he had questions
10 regarding his <u>Miranda</u> rights, <u>id.</u>, Detective Suguro told him to "hold on" so that he could clarify
11 whether defendant wanted to talk to them without an attorney present, <u>id.</u> Finally, defendant
12 agreed. <u>Id.</u> The interrogation continued without pause, and the detectives began to question
13 defendant about a stolen car. <u>Id.</u> at 16. At no point, then, did the detectives cease interrogating
14 defendant.

15 The government suggests that the police "stopped the interview" when they left the
16 interview room. Dkt. #198 at 5. But that does not cure their failure to stop the interview upon
17 defendant's request for counsel. <u>Shedelbower v. Estelle</u>, 885 F.2d 570 (9th Cir. 1989), cited by
18 the government, Dkt. #198 at 4-6, only bolsters the Court's conclusion. In <u>Shedelbower</u>, after
19 the defendant invoked his right to counsel, the officers gathered their materials to leave when
20 one of them told the defendant that the victim had identified him as the perpetrator. 885 F.2d at
21 572. Approximately five minutes after requesting an attorney, the defendant changed his mind
22 and told the officers "he wanted to talk about the case and he did not need any attorney present."
23 <u>Id.</u> Although the Ninth Circuit held that the defendant's "specific request for further discussion"
24 initiated a re-interrogation, <u>id.</u> at 574, the "first question" the Ninth Circuit addressed before
25 even reaching the <u>Edwards</u> initiation issue was "whether the interrogation ceased immediately

after [the defendant] requested an attorney," id. at 573. The Ninth Circuit found that the officer's remarks about the victim's identification did "not constitute interrogation in the normal sense of the word" since they were not in the form of express questions and "were not the functional equivalent of questioning." Id. Here, by contrast, the interrogation of defendant did not cease "immediately after he requested an attorney," id.[3] Instead, the detectives' continued questioning, see Dkt. #151, Attach. A at 14-16, "constitute[d] interrogation in the normal sense of the word," Shedelbower, 885 F.2d at 573. The detectives' decision to leave the room only after ignoring defendant's Miranda rights and convincing him to change his mind does not satisfy their obligation to cease all questioning and await defendant's initiation of contact.

Moreover, even when the detectives did eventually leave the room, they gave no indication that they had ended the interview at all. Instead, they left mid-conversation only to "make a phone call," Dkt. #151, Attach. A at 17. When defendant asked whether "this [was] gonna be a while," id. at 18, Detective Suguro assured him, "No. We'll be right back." After waiting about thirty minutes, defendant told Detective Kramer that "they said they was comin' back," and asked "what they gonna do?" Id. at 19. It is evident from the context that defendant was asking specifically whether the detectives were going to return as they had promised, not generally how the case against him was going to proceed. The question logically followed from defendant's ongoing, albeit interrupted conversation with the detectives.

In sum, the entire conversation between defendant and the detectives followed from the initial Miranda violation. The detectives failed to respect defendant's request for an attorney, and persisted in precisely the type of "badger[ing]" that Edwards sought to protect against, Bradshaw, 462 U.S. at 1044. Once defendant changed his mind about talking to police without

---

[3] By the government's own admission, the "questioning ceased within a minute of the last time Defendant confirmed that he wished to proceed without an attorney," Dkt. #151 at 17, not immediately after defendant invoked his right to counsel by stating "I do want an attorney present," Dkt. #151, Attach. A at 14.

ORDER GRANTING MOTION TO
SUPPRESS POST-ARREST
STATEMENTS - 6

an attorney present, the interview proceeded to the substance of the charge against him.  The detectives left the room only after their unlawful interrogation of defendant was in full swing.  Defendant could hardly have re-initiated conversation with the detectives when the detectives had made clear that the interview was still in progress regardless of his request for counsel.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion to suppress (Dkt. #131).

DATED this 13th day of March, 2009.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING MOTION TO
SUPPRESS POST-ARREST
STATEMENTS - 7